IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-00161-D

| | |
|---|---|
| WILHELMINA ALSTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings. Claimant, Wilhelmina Alston, seeks judicial review of the Commissioner's denial of her application for Social Security Disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). After a thorough review of the record and consideration of the briefs submitted by counsel, it is recommended that Claimant's motion for judgment on the pleadings [DE-33] be denied and that the Commissioner's motion for judgment on the pleadings [DE-34] be granted.

## STATEMENT OF THE CASE

Claimant protectively filed initial applications for DIB and SSI on October 21, 2008. (R. 17, 111-120.) She alleged disability beginning June 1, 2007 due to "bipolar, depression, bad nerves, back pain." (R. 151.) These applications were denied initially (R. 53-60) and upon reconsideration (R. 65-73). Claimant then requested a hearing before an Administrative Law Judge ("ALJ") (R. 74), which took place on May 5, 2010 (R. 27-48). On May 20, 2010, the ALJ issued a decision denying Claimant's application in its entirety. (R. 14-26.) The Appeals Council denied Claimant's request for review on December 15, 2010 (R. 5-7), which rendered the ALJ's decision a "final decision" for

purposes of judicial review. *See Walls v. Barnhart*, 296 F.3d 287, 289 (4th Cir. 2002) (noting that when the Appeals Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for purposes of appeal). Claimant then commenced this action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

I.  **Standard of review**

The scope of judicial review of a final decision regarding DIB and SSI under the Social Security Act is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *Walls*, 296 F.3d at 290; 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). This Court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. *Walls*, 296 F.3d at 290. Rather, when conflicting evidence is presented, it is up to the ALJ to resolve those inconsistencies and not the responsibility of the Court to determine the weight of the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In determining whether substantial evidence supports the Commissioner's decision, the Court's review is limited to whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his or her findings and rationale in crediting the evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

II. **The Social Security framework**

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. 20 C.F.R. §§ 404.1520, 416.920. At step one, if the

claimant is currently engaged in substantial gainful activity, the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two the Commissioner must determine whether the claimant has a severe impairment or combination of impairments which significantly limit his or her ability to perform basic work activities. If no severe impairment is found, the claim is denied. If the claimant has any severe impairments, at step three the Commissioner determines whether any of the claimant's impairments meet or medically equal the requirements of one of the Listings of Impairments ("Listings"), as listed in 20 C.F.R. § 404, Subpart P, App. 1. If any impairments meet or equal a Listing, the person is disabled *per se*. If no impairments meet or equal a Listing, at step four the claimant's Residual Functional Capacity ("RFC") is assessed to determine if the claimant can perform his or her past work despite his or her impairment(s). If so, the claim is denied. If the claimant cannot perform his or her past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience and RFC, can perform other substantial gainful work.

### III.   The ALJ's findings

Here, the ALJ proceeded through the five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920. First, at step one, the ALJ found that Claimant had not engaged in substantial gainful activity since June 1, 2007, the alleged onset date, despite having worked part-time occasionally since that time. (R. 19.) Next, at step two, the ALJ found that Claimant suffered from the severe impairments of major depressive disorder, schizophrenia, borderline intellectual functioning, alcohol abuse, cocaine abuse, degenerative disc disease, and moderate obesity. *Id.* However, at step three the ALJ determined that Claimant's impairments did not meet or medically equal a Listing. (R. 20.) Instead, at step four, the ALJ determined that Claimant retained the RFC

3

to perform a limited range of medium work with limitations, including her past relevant work as a cleaner-industrial, DOT code 381.687-018. (R. 25.) Finally, even though the ALJ had found at step four that Claimant could perform past relevant work, alternatively, at step five, the ALJ also determined that there are other jobs that exist in significant numbers in the national economy that Claimant could perform. (R. 25-26.) As a result, the ALJ found that Claimant was not disabled. (R. 26.)

IV.     The May 5, 2010 administrative hearing

Claimant was the only witness and testified to the following at the May 5, 2010 administrative hearing held in conjunction with her applications for DIB and SSI. (R. 30-47.) At the time of the hearing, she was living in Wilson, North Carolina with her 27-year-old daughter, 5-year-old grandchild, and cousin. (R. 30-31.) She testified that she did not finish high school, could not remember the last grade level she completed, and that she had been in special education classes while in school. (R. 31.) She testified that she was not able to read and had to have her daughter help her fill out job applications, but that she could read her name, use a phonebook, and do simple math such as counting money. (R. 31-32.) Later on in the hearing, Claimant testified that she read the Bible, and in response to the ALJ asking whether she was actually able to read the words in the Bible, testified that she knew some of them and that when she didn't know words, she just skipped them. (R. 45.)

Claimant testified that she had not worked in at least the two or three years prior to the hearing, but could not remember exactly how long it had been. (R. 32.) In the past, she had done home health work both in homes and at nursing homes, worked in tobacco fields, done cleaning in a hotel, worked at a job which required her to sweep and scan labels at a factory, and held several

4

jobs where she sorted produce coming down a belt. (R. 32-35.) She could not remember the longest amount of time that she had ever held any one job and testified that she had problems getting along with supervisors and co-workers in several of her past jobs. (R. 33-34, 41.)

Claimant testified that, in the past, she had used alcohol, cocaine, and marijuana. (R. 35-38.) She testified that the last time she had used any alcohol or drugs was sometime in 2009. (R. 36.) She testified that she used marijuana and cocaine once in August of 2009 because her cousin gave her a laced cigar and she didn't know what it was. (R. 35-37.) However, after that incident, she got sick and went to the doctor. (R. 36.) Later, in response to questioning by the ALJ, Claimant admitted that, prior to that incident, she had used marijuana and cocaine additional times "a long time ago." (R. 46.) She also testified that she had once tried to overdose on Lipitor and that, as a result, her daughter now gives her all of her medications. (R. 38.)

Claimant testified that she had back problems and that "they want [her] to have surgery" but she is scared. (R. 42.) She takes prescription pain medicine for her back and it helps but does not make the pain go away entirely. *Id.* As a result, when she goes to the store, an employee has to help her put her purchases in the car and her daughter or grandchild have to help her unload them when she returns. (R. 44.) When asked if she had any difficulty walking around, Claimant testified that "[e]very now and then, my leg feel like something puling [sic] in my thigh." (R. 42.) She testified that she has this pain in both legs but that it is worse in her right leg. (R. 43.) As a result, she can only walk around for about ten minutes before she has to go sit down and, some mornings, when she wakes up, she is so stiff that she can hardly get out of bed. *Id.* Claimant testified that she has trouble sleeping because of "seeing and hearing things." (R. 39.) However, she still is able to sleep all night with the aid of medication. (R. 44.) She also testified that she falls asleep a lot during the day;

5

for example, when she sits down for awhile, she falls asleep, and this happens two or three times per day. (R. 43.)

Claimant testified that she does not like to be in closed rooms because she gets "scared and nervous that someone's going to hurt [her]." (R. 40.) Claimant goes for walks with her daughter and to church with her pastor but does not want to see anyone else. *Id.* She does not like to go places such as Wal-Mart because there are a lot of people, but she does have a driver's license and drives a little bit. (R. 40-41.) Sometimes she drives alone to a small grocery store down the street from her house, where she knows the employees and can talk to them. (R. 41.) Generally, Claimant spends her days reading the Bible, looking at TV, and sitting in her room. (R. 44.) In addition, Claimant testified that sometimes she tries to rake her yard but that this hurts and she has to go and lay down to let her pain ease. *Id.* She goes to church services at least twice a week. (R. 45.) The services last two hours and Claimant sits for most of that time but does stand up when she needs to. (R. 45-46.)

## V. Arguments on appeal

On appeal, Claimant purports to make only one argument: that the ALJ's decision that Claimant can perform sustained work activities is not supported by substantial evidence. However, in the course of articulating her position, it is clear to the Court that Claimant has in fact attempted to make five separate sub-arguments to this end: (1) that the evidence shows that she has had difficulty with her past jobs; (2) that the evidence supports a finding that she was mildly mentally retarded; (3) that her medical records demonstrate a history of psychosis and/or schizophrenia; (4) that the ALJ disregarded her subjective complaints of back pain; and (5) that her impairments in combination prevent her from performing sustained work activities. In response, the Commissioner

6

first argues that Claimant's impairments were not the reason she stopped working and that, therefore, under the Social Security regulations, she is not disabled. In addition, in the alternative, the Commissioner addresses Claimant's five sub-arguments. Accordingly, the Court will evaluate the Commissioner's argument as well as Claimant's argument, utilizing the framework of her five sub-arguments, in turn.

> a. **The Commissioner's argument that Claimant's impairments were not the reason she stopped working**

At the outset, the Commissioner argues that Claimant's impairments were not the reason that she stopped working and that, therefore, under the Social Security regulations, she is not disabled. To that end, the Commissioner points out that Claimant indicated herself on her disability report that she stopped working on June 1, 2007, because she was not needed after the cucumber picking season was over. In addition, the Commissioner points out that Claimant's medical records do not show any significant treatment in 2007, despite her alleged onset date of June 1, 2007, and that the first treatment records for Claimant's allegedly disabling conditions date from September of 2008.

The Social Security regulations make it clear that, if an individual is otherwise able to work, an inability to obtain work leads to a finding that a claimant is *not* disabled:

> We will determine that you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work which exists in the national economy, but you remain unemployed because of–
>
> (1) Your inability to get work;
> (2) Lack of work in your local area;
> (3) The hiring practices of employers;
> (4) Technological changes in the industry in which you have worked;
> (5) Cyclical economic conditions;
> (6) No job openings for you;
> (7) You would not actually be hired to do work you could otherwise do, or;
> (8) You do not wish to do a particular type of work.

20 C.F.R. §§ 404.1566(c), 416.966(c).

Here, the Commissioner is correct to point out that, on her disability report, in response to a question which asks the applicant to indicate why he or she stopped working, Claimant wrote: "I was picking cucumbers once the season was over I not needed anymore." (R. 151.) However, the Court notes that the ALJ recognized that Claimant had worked part-time occasionally since her alleged onset date of June 1, 2007, albeit only at a level which did not rise to substantial gainful activity. (R. 19.) In addition, chronologically, the last "picker" job that Claimant lists on her disability report was a job she held in June 2008. (R. 152.) As a result, the Court concludes that it is at least possible, if not likely, that the job which Claimant indicated on her disability report that she had left because she was no longer needed was a part-time job which she held *after* her alleged onset date. Therefore, it is not entirely clear whether Claimant's stated reason for leaving her last job was necessarily the same as the reason(s) why she left her last job, prior to her alleged onset date, which did rise to the level of substantial gainful activity and, though the Court finds that there is at least some merit to the Commissioner's position, the Court also finds that it would be inappropriate to resolve the parties' instant motions on this basis alone. Accordingly, the Court will proceed to evaluate Claimant's argument by analyzing each of her five sub-arguments in turn.

  **b.  Claimant's sub-argument that the evidence shows that she has had difficulty with her past jobs**

First, Claimant argues that the evidence shows that she has had difficulty with her past jobs. For example, Claimant points out that she has only sustained substantial gainful activity for one year (2006), that between 1995-2008 she held roughly 17 different jobs, and that she has trouble getting along with supervisors. In response, the Commissioner points out that Claimant "neglects to

8

Case 5:11-cv-00161-D   Document 37   Filed 03/29/12   Page 8 of 19

consider the role that her admitted cocaine and alcohol abuse may have played in being able to sustain employment," Comm.'s Mem. in Supp. of Mot. for J. on the Pleadings (hereinafter "Comm.'s Mem.") at 13-14 [DE-35], and reaffirms the position that Claimant left at least her most recent job for reasons entirely unrelated to her impairments.

Before finding that a claimant is disabled, the ALJ must find at step four that the claimant cannot perform his or her past work, 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv), *and* at step five must fail to show that the claimant can perform any other substantial gainful work, 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Here, the ALJ found that Claimant was capable of performing past relevant work as a cleaner-industrial, DOT code 381.687-018. (R. 25.) In so finding, the ALJ noted that Claimant had performed that work for a "sufficient time period to learn the duties associated with this work," that she had performed this job at the level of substantial gainful employment, and that the "physical and mental demands of this work" were such that she could perform it as it is "actually and generally performed." *Id.* In addition, the ALJ found that there were other jobs in the national economy that Claimant could perform. (R. 25-26.)

At the outset, the Court notes that insofar as Claimant is attempting to argue that she had difficulty with any of her past jobs other than her past work as a cleaner-industrial, that argument is inapposite because a finding of disability is not required when a claimant is unable to do *any* job that he or she has done in the past, but only when a claimant is unable to do *every* past job and there are no other potential jobs. In addition, even to the extent that Claimant's argument can liberally be construed as an argument that she had trouble with her past job as a cleaner-industrial, Claimant has offered nothing in support of such an argument beyond, potentially, her position that she has trouble getting along with supervisors. However, the only evidence that Claimant has presented in support

9

of that position is her own subjective statements– for example, her opinion that she was fired from one job because "they act like I be doing everything wrong," (R. 33)– and Claimant has not argued that this has any relation whatsoever to her alleged impairments. Furthermore, the Court notes that Claimant has cited no authority for her positions that holding a large number of different jobs or the fact that she did only sustained substantial gainful activity for a period of one year requires a finding that a claimant is disabled, and the Court is inclined to agree with the Commissioner that it is troubling that Claimant has failed to address what role her substance abuse or economic conditions entirely unrelated to her impairments may have played in her inability to hold a job for an extended period of time. Accordingly, Claimant's sub-argument that the evidence shows that she has had difficulty with her past jobs is rejected.

    **c.    Claimant's sub-argument that the evidence supports a finding that she was mildly mentally retarded**

Next, Claimant argues that the evidence supports a finding that she was mildly mentally retarded. To that end, she points out that she only completed the 9th grade, that she was in special education classes, and that she had IQ scores of 70-71. In response, the Commissioner points out that Claimant left school because she was pregnant rather than because of any mental impairment; that being in special education classes does not, in and of itself, establish that a person is mentally retarded or establish the existence of deficits in adaptive functioning, particularly in light of Claimant's past work history, medical records, and range of daily activities; that an IQ score of 71 is out of the mentally retarded range contemplated by Listing 12.05; and that the state agency medical consultant reviewed the evidence of record and determined that Claimant was not mentally retarded during her school years.

10

Here, the ALJ noted that Claimant suffered from the severe impairment of borderline intellectual functioning. (R. 19.) However, the ALJ considered Claimant's mental impairments and determined that they did not, either singly or in combination, meet or medically equal any of several Mental Listings, including Listing 12.05, Mental Retardation.[1] (R. 20.) In so doing, the ALJ specifically considered the two potentially relevant sub-parts of Listing 12.05, the Paragraph C and D criteria, and noted specific evidence in the record to support his conclusions that Claimant did not satisfy their requirements. *Id.* To that end, though recognizing evidence of an IQ score of 70 from 1981 (R. 21), the ALJ pointed to evidence which indicated that Claimant had only moderate restriction in activities of daily living, mild difficulties in social functioning, and moderate difficulties with regard to concentration, persistence, or pace (R. 20). For example, the ALJ noted evidence which showed that Claimant was able to drive a car, live alone and attend to personal

---

[1] Listing 12.05, Mental Retardation, reads:

Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied:

A. Mental incapacity evidenced by dependence on others for personal needs (e.g., toileting, eating, dressing, or bathing) and an inability to follow directions, such that the use of standardized measures of functioning is precluded; or

B. A valid verbal, performance, or full scale IQ of 59 or less; or

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence or pace;
    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § 404, Subpart P, App. 1, §12.05.

11

needs, maintain relationships with friends and family, and attend church. *Id.* Similarly, the ALJ also pointed to evidence which indicated that Claimant's history of adaptive functioning was good and included working at the substantial gainful activity level and living independently. (R. 21.)

At the outset, the Court notes that Claimant has not even argued that she meets Listing 12.05, but instead argues that she satisfies the definition of "mild mental retardation" found in the Diagnostic and Statistical Manual of Mental Disorders. However, to the extent that Claimant's argument can liberally be construed to constitute an argument that she met Listing 12.05, the Court finds that the ALJ thoroughly evaluated whether Claimant's mental impairments, either singly or in combination, met Listing 12.05, and in particular the Paragraph C and D criteria, and found that they did not. None of the three pieces of evidence that Claimant cites in support of her argument– that she only completed the 9th grade, was in special education classes, and had IQ scores of 70-71– necessarily lead to a conclusion that Claimant meets either the Paragraph C or D criteria of Listing 12.05, and Claimant has cited no authority to the contrary. Accordingly, Claimant's sub-argument that the evidence supports a finding that she was mildly mentally retarded is rejected.

### d. Claimant's sub-argument that her medical records demonstrate a history of psychosis and/or schizophrenia

Next, Claimant argues that her medical records demonstrate a history of psychosis and/or schizophrenia because, for example, in 1994 she was admitted to a hospital after hearing voices which directed her to kill herself and her family. Though a drug test for cocaine at that time was positive, Claimant contends that she hears voices even when not using drugs. In response, the Commissioner contends that Claimant has not pointed to any evidence in the record which indicates

12

that she suffers from hallucinations when she is not using alcohol or illegal drugs and, in fact, that the evidence tends to indicate that the opposite is true.

Here, the ALJ noted that Claimant suffered from the severe impairment of schizophrenia. (R. 19.) However, as discussed in Section V.c, *supra*, the ALJ considered Claimant's mental impairments and determined that they did not, either singly or in combination, meet or medically equal any of several Mental Listings, including Listing 12.03, Schizophrenic, Paranoid and Other Psychotic Disorders.[2] (R. 20.) In so doing, the ALJ specifically considered the two sub-parts of

---

[2]Listing 12.03, Schizophrenic, Paranoid and Other Psychotic Disorders, reads:

Characterized by the onset of psychotic features with deterioration from a previous level of functioning. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

   A. Medically documented persistence, either continuous or intermittent, of one or more of the following:

      1. Delusions or hallucinations; or
      2. Catatonic or other grossly disorganized behavior; or
      3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:

         a. Blunt affect; or
         b. Flat affect; or
         c. Inappropriate affect;

   or

      4. Emotional withdrawal and/or isolation;

AND

   B. Resulting in at least two of the following:

      1. Marked restriction of activities of daily living; or
      2. Marked difficulties in maintaining social functioning; or
      3. Marked difficulties in maintaining concentration, persistence, or pace; or
      4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the

Listing 12.03, the Paragraph A/B and C criteria, and noted specific evidence in the record to support his conclusions that Claimant did not satisfy their requirements. *Id.* To that end, the ALJ pointed to evidence which indicated that Claimant had only moderate restriction in activities of daily living, mild difficulties in social functioning, and moderate difficulties with regard to concentration, persistence, or pace. *Id.* For example, the ALJ noted evidence which showed that Claimant was able to drive a car, live alone and attend to personal needs, maintain relationships with friends and family, and attend church. *Id.* In addition, in evaluating Claimant's RFC, the ALJ noted diagnoses of schizophrenia and paranoia in October 2008, along with a global assessment of functioning ("GAF") score of 48. (R. 22.) However, the ALJ also noted that in October 2008 Claimant had admitted to current alcohol and cocaine use and that, at November 2008 and May 2009 follow-up visits, Claimant denied any psychotic symptoms, which tended to support a finding that the GAF score represented a "transient worsening of her condition in the presence of substance abuse and the absence of treatment." *Id.* The ALJ also noted that in 2009 her conditions were deemed to be generally well-controlled by medication, a medical visit in June 2009 where Claimant had no psychotic symptoms, and a visit in March 2010 where she had only mild hallucinations. (R. 23.) Finally, the ALJ found that Claimant's "allegations regarding symptoms and limitations arising from her mental impairments are not fully persuasive," and that, although Claimant had "been noted to

---

following:

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. § 404, Subpart P, App. 1, §12.03.

14

have some severe symptoms, they are generally well controlled with her medications and abstinence from drug abuse." (R. 24.)

At the outset, the Court notes that Claimant has not even argued that she meets Listing 12.03, but instead simply argues that her medical records demonstrate a history of psychosis and/or schizophrenia. Despite the fact that the ALJ actually *found* that Claimant suffered from the severe impairment of schizophrenia, to the extent that Claimant's argument can liberally be construed to constitute an argument that she met Listing 12.03, the Court finds that the ALJ thoroughly evaluated whether Claimant's mental impairments, either singly or in combination, met Listing 12.03 and found that they did not. The only case-specific piece of evidence that Claimant cites in support of her argument– that in 1994, while under the influence of cocaine, she was admitted to a hospital after hearing voices which directed her to kill herself and her family– does not tend to lead to a conclusion that Claimant meets Listing 12.03, and Claimant has cited no authority to the contrary. Similarly, the Court agrees with the Commissioner that it is troubling that Claimant has pointed to nothing which indicates that she suffers from hallucinations when she is not using alcohol or illegal drugs, except her own subjective statements. Accordingly, Claimant's sub-argument that her medical records demonstrate a history of psychosis and/or schizophrenia s rejected.

    e.    **Claimant's sub-argument that the ALJ disregarded her subjective complaints of back pain**

Next, Claimant argues that the ALJ disregarded her subjective complaints of back pain, even though they are supported by objective medical evidence such as a May 29, 2009 MRI. In response, the Commissioner contends that, in direct contrast to Claimant's position, the May 29, 2009 MRI does not confirm her complaints of pain but, rather, "confirms, as the ALJ found, that [Claimant]

15

has a condition which could reasonably be expected to cause the pain alleged (but not to the degree alleged)," Comm.'s Mem. at 15, and that the ALJ performed a proper credibility analysis before finding her not credible, supported by citations to the evidence. In assessing a claimant's credibility, the ALJ must follow the two step process outlined by the Fourth Circuit in *Craig v. Chater*, 76 F.3d 585, 594-95 (4th Cir. 1996). First, the ALJ must determine whether the claimant's medically determinable impairment(s) could reasonably cause the alleged symptoms. *Craig*, 76 F.3d at 594-95. Second, the ALJ must evaluate the claimant's statements regarding those symptoms. *Id.* at 595. The Social Security regulations require that the ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

Here, the ALJ clearly outlined both steps of the *Craig* analysis and considered them each in turn. At *Craig* step one, the ALJ found that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, at *Craig* step two, the ALJ found that Claimant's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [Claimant's RFC]." (R. 24.) In so finding, the ALJ noted that Claimant had not complained of back pain at several 2008 doctor's visits and that, after being treated for back pain in 2009, attended only one session of physical therapy and declined more aggressive therapy. *Id.* In addition, the ALJ noted that consultative examination notes and Claimant's self-described daily activities belie her pain complaints. *Id.* As a result, the ALJ found that Claimant's "testimony regarding her physical symptoms and limitations

16

is not fully persuasive" and that her "treatment has been conservative and intermittent in nature and her statements to treating providers are not consistent with her complaints at hearing." (R. 24.)

Even assuming, without deciding, that the results of the May 29, 2009 MRI in isolation would tend to support Claimant's position that there is objective medical evidence to support her subjective complaints of back pain, the Court finds that this fact is not dispositive. Claimant points to absolutely no other evidence in the record in support of her argument. To the contrary, the record is replete with evidence which tends to support a finding that Claimant's back pain was non-severe and/or well-controlled. To that end, the ALJ outlined Claimant's treatment history and pointed to specific examples of facts that supported his position. Therefore, as a result, the Court finds that the ALJ applied the appropriate two-step analysis under *Craig* in evaluating Claimant's complaints of back pain and that substantial evidence supported his determination that her complaints were not fully credible. Accordingly, Claimant's sub-argument that the ALJ disregarded her subjective complaints of back pain, even though they are supported by objective medical evidence, is rejected.

### f. Claimant's sub-argument that her impairments in combination prevent her from performing sustained work activities

Finally, Claimant argues that her impairments in combination prevent her from performing sustained work activities. In response, the Commissioner points out that the plain language of the ALJ's decision indicates that the ALJ considered Claimant's impairments in combination.

An ALJ must assess a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). When a claimant has multiple different impairments, an ALJ must consider their cumulative effects. 42 U.S.C. § 423(d)(2)(B); *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989). However, "[s]ufficient consideration of the combined

17

Case 5:11-cv-00161-D   Document 37   Filed 03/29/12   Page 17 of 19

effects of a plaintiff's impairments is shown when each is separately discussed in the ALJ's decision, including discussion of a plaintiff's complaints of pain and level of daily activities." *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citation omitted).

Here, the Court finds that the ALJ stated that he had considered Claimant's impairments in combination, in so many words, both during his consideration of whether Claimant met any of the Listings (R. 20) and during his RFC determination (R. 25). In addition, over the course of his decision, the ALJ discussed separately and in detail the effects of all of Claimant's impairments individually and considered Claimant's complaints of pain and level of daily activities, thus alternatively satisfying his duty under *Baldwin*. Accordingly, Claimant's sub-argument that her impairments in combination prevent her from performing sustained work activities is rejected.

For all of the foregoing reasons, the Court finds that the ALJ accurately stated the law and correctly applied it to the facts of Claimant's case and that, therefore, his determination that Claimant can perform sustained work activities is supported by substantial evidence. Accordingly, Claimant's main argument that the ALJ's decision that Claimant can perform sustained work activities is not supported by substantial evidence, including her five sub-arguments, is rejected.

## CONCLUSION

Accordingly, for the foregoing reasons, the undersigned **RECOMMENDS** that Claimant's motion for judgment on the pleadings [DE-33] be **DENIED** and that the Commissioner's motion for judgment on the pleadings [DE-34] be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review

by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This the 29th day of March, 2012.

_____
DAVID W. DANIEL
UNITED STATES MAGISTRATE JUDGE